NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA O'CONNOR, et al., | CIVIL ACTION NO. 16-5177 (JLL) |
| Plaintiffs, | OPINION |
| v. | |
| THE DODGE COMPANY, INC., et al., | |
| Defendants. | |

**LINARES, District Judge**

Each defendant in this action has a motion pending before the Court. First, the defendant Hydrol Chemical Company ("Hydrol") moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and Rule 12(b)(6) to dismiss all of the plaintiffs' claims that are asserted against it. (See dkt. 7 through dkt. 7-7; dkt. 8; dkt. 11 through dkt. 11-23; dkt. 12; dkt. 12-1; dkt. 17.)[1] Second, the defendant Pierce Companies ("Pierce") moves pursuant to Rule 12(b)(2) and Rule 12(b)(6) to dismiss all of the plaintiffs' claims that are asserted against it. (See dkt. 13 through dkt. 13-3; dkt. 14; dkt. 19.) Third, the defendant The Dodge Company, Inc. ("Dodge") joins with the part of Hydrol's motion that seeks to dismiss the plaintiffs' claim for consumer fraud pursuant to

---

[1] The Court will refer to documents by the docket entry numbers and the page numbers imposed by the Electronic Case Filing System.

Rule 12(b)(6), on the ground that the allegations therein are not covered by the New Jersey Consumer Fraud Act ("NJCFA"). (See dkt. 9; dkt. 9-1.)[2] The plaintiffs oppose all of the motions. (See dkt. 10; dkt. 18; dkt. 18-1.)

The Court will resolve the three motions upon a review of the papers and without oral argument. See L.Civ.R. 78.1(b). The Court presumes that the parties are familiar with the factual context and the procedural history of this action. For the following reasons, the Court will:

- grant the parts of the motions filed by Hydrol and Pierce that seek relief under Rule 12(b)(2);

- grant the parts of the motions filed by Hydrol and Pierce that seek relief under Rule 12(b)(6) insofar as those motions raise arguments concerning proper pleading standards;

- deny Dodge's motion and the parts of the motions filed by Hydrol and Pierce that seek to dismiss the claims for consumer fraud on the ground that the allegations therein are not covered by the NJCFA;

- otherwise deny the remaining parts of the motions filed by Hydrol and Pierce without prejudice; and

- dismiss the complaint, but without prejudice to the plaintiffs to file an amended complaint in 30 days that properly alleges personal jurisdiction, and that complies with proper pleading standards.

---

[2] Dodge does not move to dismiss for lack of personal jurisdiction.

## BACKGROUND

The plaintiffs, Patricia O'Connor and Megan O'Connor, initially brought this action to recover damages for personal injuries in New Jersey state court. (See dkt. 1-1 at 2.) The complaint contains causes of action for (1) strict product liability, (2) breach of express and implied warranties, (3) negligence, (4) fraudulent misrepresentation, (5) consumer fraud, and (6) loss of consortium.

The defendants removed this action to federal court under diversity jurisdiction. See 28 U.S.C. § 1332(a). (See dkt. 1.) The complaint contains an allegation that the plaintiffs are currently New Jersey citizens. Dodge is deemed to be a Massachusetts citizen. (See dkt. 1 at 2.) Pierce is deemed to be a Texas citizen. (Id. at 3; see also dkt. 13-2 at 1.) Hydrol is deemed to be a Pennsylvania citizen. (See dkt. 1 at 2.) The defendants manufacture, market, distribute, and sell embalming chemical products, as well as other chemicals and supplies, for use by morticians and by funeral homes.

The plaintiffs allege that Patricia O'Connor was diagnosed with leukemia in March 2014, and allege that she developed leukemia due to her exposure to formaldehyde in the workplace during the course of her employment as a funeral director. In the complaint, the plaintiffs allege that approximately 35 products manufactured by Dodge, one product manufactured by Hydrol, and one product manufactured by Pierce contain formaldehyde. (See dkt. 1-1.) However, the complaint lacks any allegations concerning where Patricia O'Connor worked; the dates that she worked in funeral homes; when or if she was exposed to the listed products; or the manner of her exposure to formaldehyde,

i.e., by touching it or by breathing it in. (See generally dkt. 1-1.) In fact, the complaint does not contain a specific allegation that Patricia O'Connor actually used the defendants' products at issue during the course of her employment in the funeral industry.

## LEGAL STANDARDS

### I. Rule 12(b)(2)

It is not necessary for the Court to restate the standard for resolving a motion made pursuant to Rule 12(b)(2) to dismiss for lack of general jurisdiction or lack of specific jurisdiction, as that standard has been already enunciated. See Cerciello v. Canale, 563 Fed.Appx. 924, 925–27 (3d Cir. 2014) (discussing Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324 (3d Cir. 2009); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93 (3d Cir. 2004); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141 (3d Cir. 1992); and Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434 (3d Cir. 1987)); see also Krishanthi v. Rajaratnam, No. 09-5395, 2010 WL 3429529, at *3, *16 (D.N.J. Aug. 26, 2010) (discussing the same cases).

However, it bears mentioning in this instance that once the defendants have argued in support of a motion to dismiss that a district court lacks personal jurisdiction, the burden then falls on the plaintiffs to go beyond mere allegations and to show sufficient facts to establish that personal jurisdiction is proper in the forum state. See Provident Nat'l Bank, 819 F.2d at 437. Furthermore, "the plaintiff[s'] right to conduct jurisdictional discovery should be sustained" only if the plaintiffs present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the defendants] and the forum state." Toys "R" Us, Inc. v.

Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (quotation marks and citation omitted).

## II. Rule 12(b)(6)

It is also not necessary for the Court to restate the standard for resolving a motion made pursuant to Rule 12(b)(6). See Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 764–65 (3d Cir. 2013) (setting forth standard; citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); Fowler v. UPMC Shadyside, 578 F.3d 203, 209–12 (3d Cir. 2009) (setting forth standard; citing Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009)). However, it bears mentioning that the plaintiffs must "plead[] factual content [in the complaint] that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." See Iqbal, 556 U.S. at 678 (citing Rule 8(a) and Twombly, 550 U.S. at 556).

## DISCUSSION

### I. Personal Jurisdiction

Hydrol and Pierce argue that the Court lacks general jurisdiction over them, because they do not have offices, bank accounts, records, assets, or a presence in New Jersey. Furthermore, they argue that the plaintiffs do not allege that Hydrol and Pierce have any level of contact with New Jersey at all.

Hydrol and Pierce also argue that the Court lacks specific jurisdiction over them, because they have not purposefully directed their activities or communications to New Jersey, and thus any contacts they may have to New Jersey are too attenuated. They also argue that the complaint is bereft of specific allegations that Patricia O'Connor's injuries arose from, or are related to, any alleged conduct by Hydrol or Pierce within or directed

toward New Jersey, such as any allegations that Patricia O'Connor used their products in New Jersey after they were sold, shipped, or sent to her or to her employer. (See dkt. 7-6 at 13, 16–19; dkt. 13 at 10–13.)

The plaintiffs do not raise any arguments in support of this Court's general jurisdiction over Hydrol and Pierce in response. As to specific jurisdiction, the plaintiffs argue in their brief in opposition that "Plaintiff [Patricia O'Connor] alleges that Hydrol [and Pierce] sold [their] product[s] to her in New Jersey," and argue that the complaint contains those allegations in paragraphs 4, 7, and 8. (Dkt. 10 at 9; dkt. 18 at 9.)

But the plaintiffs' argument here is without merit, as those paragraphs do not contain any allegations that Hydrol and Pierce sold their products to Patricia O'Connor for use in New Jersey. The Court will quote paragraphs 4, 7, and 8 in full:

> 4. Plaintiff, Patricia O'Connor, a funeral director, is a resident of the State of New Jersey.
>
> ....
>
> 7. Defendant, Pierce Companies, is a chemical company engaged in the business of creating, manufacturing, marketing, distributing, labeling, researching, developing and selling embalming chemical products and other chemicals and supplies used by morticians and funeral homes, including, but not limited to the following products: Powertone (36 Index); and others.
>
> 8. Defendant, Hydrol Chemical Company, is a chemical company engaged in the business of creating, manufacturing. marketing, distributing, labeling, researching, developing and selling embalming chemical products and other chemicals and supplies used by morticians and funeral homes, including, but not limited to the following products: Saturol; and others.

(Dkt. 1-1 at 3–4.) Those paragraphs do not contain the allegations concerning specific

jurisdiction that the plaintiffs now argue that they contain. Thus, the plaintiffs have failed to even assert basic allegations concerning personal jurisdiction in the complaint.

The plaintiffs also argue the following in support of specific jurisdiction over Hydrol and Pierce:

> In the matter at Bar, the cause of action is clearly related to Hydrol's [and Pierce's] contact[s] with New Jersey. Inverting the allegations, if Hydrol's product [and Pierce's product] were not within the State, [they] would not have caused or contributed to Plaintiff's cancer.

(Dkt. 10 at 10; dkt. 18 at 10.) However, because the plaintiffs have failed to submit affidavits or other proof to support their arguments that the Court has personal jurisdiction over Hydrol and Pierce, that aforementioned argument is the epitome of a "mere conclusory statement[]," and it simply will not suffice to give rise to personal jurisdiction. Iqbal, 556 U.S. at 678. There is not one allegation in the complaint that specifically asserts that Patricia O'Connor used the products at issue while working for a specific employer during a specific timeframe in New Jersey, and thus the complaint does not assert that her alleged injuries unquestionably arose out of or are related to at least one specific activity that the defendants purposely directed toward New Jersey. See Daimler AG v. Bauman, 134 S.Ct. 746, 754–55 (2014); Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).

To the extent that the plaintiffs may be attempting to amend their personal jurisdiction allegations through their briefs in opposition, rather than by seeking to file a

proper amended complaint, that is improper. See Hughes v. United Parcel Serv., Inc., 639 Fed.Appx. 99, 104 (3d Cir. 2016); Scott v. Cohen, 528 Fed.Appx. 150, 152 (3d Cir. 2013).

Therefore, the Court will grant the parts of the motions filed by Hydrol and Pierce that seek to dismiss the complaint for lack of personal jurisdiction. However, the Court will dismiss the complaint without prejudice, and give the plaintiffs an opportunity to file an amended complaint that establishes a basis for personal jurisdiction over Hydrol and Pierce. See Lee-Peckham v. Runa, LLC, No. 14-6635, 2015 WL 150120, at *3 (D.N.J. Jan. 12, 2015) (doing the same in granting a motion to dismiss for lack of personal jurisdiction). The plaintiffs are hereby advised that they must specifically assert the basis for personal jurisdiction in the amended complaint, and that they must not rely on conclusory statements.

## II. Relief Pursuant To Rule 12(b)(6)

The Court also agrees with Hydrol and Pierce that the plaintiffs have presented a complaint that suffers from deficiencies concerning basic pleading standards in support of their causes of action. Indeed, the deficiencies in the plaintiffs' factual allegations mirror the deficiencies in the plaintiffs' personal jurisdiction allegations. In response to the defendants' arguments, the plaintiffs merely argue that their allegations are sufficient, and that the "complaint speaks for itself to the extent that it alleges that Plaintiff [Patricia O'Connor] was exposed to Hydrol's [and Pierce's] formaldehyde-containing product[s]." (Dkt. 10 at 15; dkt. 18 at 16.)

The plaintiffs have failed to provide the defendants with an opportunity to meaningfully respond to the allegations, because they have not alleged when, where, or even if Patricia O'Connor used the defendants' products. They raise nothing "more than a sheer possibility that [the] defendant[s] ha[ve] acted unlawfully." Iqbal, 556 U.S. at 678. Although the heightened pleading standards of Iqbal and Twombly do not require detailed factual allegations, the factual allegations presented by the plaintiffs in this instance "will not do," as they "stop[] short of the line between possibility and plausibility." Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quotation marks and citation omitted).

The plaintiffs' complaint must contain more than "unadorned, the-defendant unlawfully-harmed-me accusation[s]." Id. (citation omitted). In this instance, the complaint completely lacks even one specific allegation that the defendants unlawfully harmed the plaintiffs. In other words, the plaintiffs do not specifically allege the wrongdoing for which each defendant is liable. As set forth by the Third Circuit Court of Appeals:

> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (case citation omitted; relying upon Rule 8(a)(2)).

9

The plaintiffs must assert when and where Patricia O'Connor was exposed to the formaldehyde that is allegedly found in the defendants' products, and that she was injured thereby. See In re Shop-Vac Marketing & Sales Practices Litig., 964 F.Supp.2d 355, 363 (M.D. Pa. Aug. 9, 2013) (granting a motion under Rule 12(b)(6) to dismiss consumer-fraud and breach-of-warranty claims, because plaintiffs failed to allege in the complaint "when they purchased [the products at issue]," which they were required to do "[a]t a minimum"); see also Jones v. Clark County Sch. Dist., No. 15-0010, 2016 WL 1270996, at *2–3 (D. Nev. Mar. 31, 2016) (granting a motion under Rule 12(b)(6) to dismiss harassment and constructive-discharge claims, because plaintiff "does not allege any dates on which [the allegedly offensive conduct] occurred"); Rowan v. Haiyasaki, No. 14-197, 2014 WL 2452528, at *3 (D. Haw. May 30, 2014) (dismissing claims brought under 42 U.S.C. § 1983, because "[w]ithout dates or specific allegations stating what each Defendant did and when, Plaintiff's Complaint does not state a plausible claim for relief on its face"); Humphreys v. Equifax Info. Servs., LLC, No. 08-492, 2009 WL 3615072, at *1 (D. Utah 2009) (granting a motion under Rule 12(b)(6) to dismiss Fair Credit Reporting Act and Fair Debt Collection Practices Act claims, because plaintiff "gives no dates or specific instances to back up th[e] allegation" that defendant failed to respond to the dispute at issue).

Therefore, the Court will grant the parts of the motions filed by Hydrol and Pierce that seek to dismiss the complaint for failure to state a claim. But in the interests of justice and to be consistent with the aforementioned determination on the issue of

personal jurisdiction, the Court will dismiss the plaintiffs' claims without prejudice. In addition, the Court will give the plaintiffs an opportunity to file an amended complaint that contains proper factual allegations that establish a cause of action against the defendants. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1435 (3d Cir. 1997) (stating that when a district court finds that a complaint in its current form cannot survive a motion under Rule 12(b)(6) due to the plaintiff's deficient allegations, the district court should grant leave to amend if the plaintiff can address the deficiencies in an amended complaint); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (stating that a district court should grant leave to a plaintiff to amend a complaint that has been dismissed under Rule 12(b)(6) within a set period of time, unless permitting an amendment would be inequitable or futile).

For instance, the plaintiffs should at least allege in the amended complaint that Patricia O'Connor used the defendants' products, as well as the manner in which she used the products, during the course of her employment with specifically-alleged employers during a specifically-alleged timeframe, and that she was exposed to formaldehyde and developed leukemia as a result. This is particularly appropriate for the plaintiffs' claims that allege fraudulent misrepresentation and consumer fraud, which are subject to a heightened pleading standard. See Fed.R.Civ.P. 9(b); see also Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (stating that a "plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation"); In re Burlington Coat Factory Sec.

Litig., 114 F.3d at 1422 (stating that a fraud claim must include "the 'who, what, when, where and how' elements"); JWQ Cabinetry Inc. v. Granada Wood & Cabinets Inc., No. 13-4110, 2015 WL 1189577, at *6–8 (D.N.J. Mar. 16, 2015) (stating the same concerning NJCFA and common law fraud claims).

### III. NJCFA Claim

The Court, although granting general relief under Rule 12(b)(6), will address the requests filed by all three defendants that seek dismissal of the plaintiffs' consumer fraud claim on the ground that the defendants' products, i.e., embalming products, are not the kind of merchandise covered by the NJCFA. They argue that those products are not covered by the NJCFA because they are not generally sold to the public at large, and that they are specialty items that are only sold to those involved in the funeral industry. (See dkt. 7-6 at 23–24; dkt. 9 at 1; dkt. 13 at 22–23.)

The NJCFA makes it an unlawful practice to use "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." See N.J.S.A. 56:8-2. The term "merchandise" is defined by the NJCFA as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

The defendants' arguments on this issue are without merit. The Court comes to this conclusion based upon persuasive authority found in the case of Viking Yacht

Company v. Composites One LLC, 496 F.Supp.2d 462 (D.N.J. 2007).  In that case, the manufacturers of recreational motor yachts asserted a claim under the NJCFA against the maker of a gel coat that they used to seal the hulls of yachts that were being manufactured for sale.  The yacht manufacturers alleged that the gel coat cracked prematurely on many of the hulls, and that the gel coat failed to act as a barrier to prevent water and other materials from damaging the yachts.  The gel-coat maker argued that the gel coat was not merchandise covered by the NJCFA, because the gel coat was not mass produced for sale to the general public, and because it was not a product that the average person would know how to use.  The court rejected that argument, and held that the NJCFA is expressly not limited to protecting those who buy items for personal, family, or household use, and that there is no requirement that the average person know how to use a product for it to be considered "merchandise" under the NJCFA.  Id. at 473 n.19.  That court thus held that the yacht manufacturers, in their position as the buyers of gel coat, could assert a claim under the NJCFA against the gel-coat maker for the allegedly faulty merchandise.

      The court in Viking Yacht Company acknowledged that situations that involve wholesalers buying merchandise for resale to the public are not covered by the NJCFA.  However, the court went on to state that the yacht manufacturers bought the gel coat for their own use in manufacturing the yachts, and that they were not buying the gel coat for the purposes of reselling it to the public, and thus they could assert a claim under the NJCFA.  The court held that the yacht manufacturers:

> remove gel coat from the containers in which it is sold and use it as a component part in the manufacture of boats. Plaintiffs then offer these boats, whose outer layer is composed of gel coat, for sale to the public. Thus, Plaintiffs consume the gel coat in the same sense that any purchaser who opens a product from its packaging and uses the product consumes it.
>
> . . . .
>
> Plaintiffs here undeniably did more than simply re-package the gel coat for resale. After Plaintiffs applied the gel coat to the boats, they could not have turned around and re-sold the gel coat in its original state. The gel coat became part of a greater product sold by Plaintiffs. Thus, due to Plaintiffs' use of the gel coat prior to sale, we hold that Plaintiffs diminished the value of the gel coat and are "consumers" under the [NJCFA].

Id. at 474–75. The situation in the instant case is similar, because the defendants' products are purchased by those involved in the funeral industry in order to perform funeral services, and those products are not turned around and re-sold. See also Stockroom, Inc. v. Dydacomp Dev. Corp., 941 F.Supp.2d 537, 543–45 (D.N.J. 2013) (finding that a retailer of "adult-themed products" could maintain a claim under the NJCFA against a software company that sold it an allegedly faulty credit card processing system, because (a) the NJCFA applies to the sale of standardized merchandise for use in business operations, and (b) the retailer was a consumer that purchased the system for consumption, and not a wholesaler that purchased it for resale). Therefore, the Court finds that the defendants' embalming products are merchandise covered by the NJCFA. The Court offers no further opinion at this juncture on whether the NJCFA claim is

dismissible on other grounds.[3]

## CONCLUSION

Given the manner in which the plaintiffs have drafted their complaint, the Court is compelled to dismiss it. The Court will thus grant the separate motions to the extent that the defendants argue that the plaintiffs have failed to meet the basic pleading requirements concerning their personal jurisdiction allegations and all of their causes of action. The Court will do so without prejudice to the plaintiffs to meet these standards in an amended complaint.

In drafting an amended complaint, the plaintiffs should plead specific facts that would establish personal jurisdiction over each defendant, and that would allow the court to draw the reasonable inference that the defendants are liable for the causes of action. See Lee-Peckham, 2015 WL 150120, at *3 (directing the same when granting a motion to dismiss under Rule 12(b)(2) and Rule 12(b)(6), and dismissing the complaint without prejudice). The defendants will then be "free to reassert [their] remaining arguments in support of dismissal . . . once [the plaintiffs] ha[ve] filed an Amended Complaint in

---

[3] Dodge, in seeking to dismiss the NJCFA claim, relied on the arguments presented in Hydrol's brief. However, Hydrol's brief addresses the one Hydrol product that is listed in the complaint, and makes no mention of the approximately 35 allegedly offending products manufactured by Dodge that the plaintiffs list in the complaint. (See dkt. 7-6 at 31–32.) Assuming that the plaintiffs file an amended complaint, and assuming that Dodge engages in dispositive motion practice thereafter, Dodge should specifically address the merits of the plaintiffs' claims insofar as they pertain to Dodge's products.

accordance with the directives set forth above," if appropriate. Id. The Court will issue an appropriate order.

 

_____
**JOSE L. LINARES**
United States District Judge

Dated: November __17__, 2016