UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

PATRICIA O'CONNOR and MEGAN
O'CONNOR,

      Plaintiffs,

         vs.

THE DODGE COMPANY, INC.;
PIERCE COMPANUES; HYDROL
CHEMICAL COMPANY; XYZ CORP.,
INC. (1-100); JOHN DOES (1-
100) and JAME DOES (1-100),,

      Defendants.

CIVIL ACTION No: 2:16-cv-05177

**AMENDED COMPLAINT WITH JURY DEMAND**

    Plaintiffs, Patricia O'Connor and Megan O'Connor ("Plaintiffs"), by and through their attorneys, the Law Office of Robert A. Tandy, LLC., by way of Amended Complaint against Defendants, THE DODGE COMPANY, INC.; PIERCE COMPANIES; HYDROL CHEMICAL COMPANY; XYZ Corp., Inc.; JOHN DOES (1-100) and JANE DOES (1-100) (collectively referred to as "Defendants"), allege as follows:

### NATURE OF ACTION AND VENUE

    1. This is an action filed by Plaintiffs against the above-named Defendants for, but not limited to, damages arising from creating, manufacturing, marketing, distributing, labeling, researching, developing, and selling defective embalming chemical products.

1

2. This action is further based upon common law and statutory claims associated with the wrongful acts of Defendants including, but not limited to, breaches of express, implied and statutory warranties; strict liability claims; and negligence.

3. Venue lies in the State of New Jersey pursuant to 28 U.S. Code § 1391(b)(2).

## PARTIES

4. At all relevant times, Plaintiff, Patricia O'Connor, a funeral director, has been a resident of the State of New Jersey.

5. At all relevant times, Plaintiff, Megan O'Connor, has been lawfully married to Plaintiff Patricia O'Connor.

6. Defendant, The Dodge Company, Inc., is a global chemical company engaged in the business of creating, manufacturing, marketing, distributing, labeling, researching, developing and selling embalming chemical products and other chemicals and supplies used by morticians and funeral homes, including, but not limited to the following products: Permaglo (36 index); Metasyn Normal (28 index); Introfiant (50 index) OTC; Jaundofiant Basic; Jaundofiant Control; Rectofiant; Plasdoplake; Metaflow; Restorative; Edemaco; Perma-Cav 50; Dri-Cav; Syn-Cav; Freedom Cav; Action Powder; Hardening Compound; Q-S Powder; Dryene Penetrating; Dryene Basic; Dry Wash; Syn-Gel HV; Dis-Spray; Perma-Seal Glue; Inr-Seel Paste; Kaloform Cream;

2

Germasidol Soap; Feature Builder Firm; Feature Builder; Feature Builder Solvent; Aron Alpha Glue; Aron Alpha Solvent; Lip Wax and Surface Restorer Wax; Dodge Make-up and Air Brush Make-up; and others.

7.    From 1996 to the present, Plaintiff worked at Quinn-Hopping Funeral Home, subsequently purchased by an entity known as Services Corporation International ("SCI"), which is located in the State of New Jersey, where her employer, during all relevant times, routinely purchased Defendant Dodge's products, Permaglo (36 index); Metasyn Normal (28 index); Introfiant (50 index) OTC; Jaundofiant Basic; Jaundofiant Control; Rectofiant; Plasdoplake; Metaflow; Restorative; Edemaco; Perma-Cav 50; Dri-Cav; Syn-Cav; Freedom Cav; Action Powder; Hardening Compound; Q-S Powder; Dryene Penetrating; Dryene Basic; Dry Wash; Syn-Gel HV; Dis-Spray; Perma-Seal Glue; Inr-Seel Paste; Kaloform Cream; Germasidol Soap; Feature Builder Firm; Feature Builder; Feature Builder Solvent; Aron Alpha Glue; Aron Alpha Solvent; Lip Wax and Surface Restorer Wax; Dodge Make-up and Air Brush Make-up, for Plaintiff's use.

8.    At all relevant times, Plaintiff often and routinely used each and every one of the Defendants Dodge's products, set forth and identified at length above, as the nature of the embalming procedures on deceased bodies called for the use of the specific products, while working at her employer's New

3

Jersey funeral home to embalm deceased bodies, by injecting or otherwise inserting or placing said products into or upon the deceased bodies.

9.    At all relevant times, when Plaintiff was working at the funeral home, she routinely used each and every one of the products that Defendant, Dodge, caused to appear in New Jersey for her use in embalming deceased bodies, and Plaintiff routinely inhaled the fumes from Defendants Dodge's products, set forth and identified at length above, and Defendant's Dodge's said products routinely came into contact with Plaintiff's skin.

10.    At all relevant times, Plaintiff's employer, a New Jersey citizen, learned about Defendants Dodge's products, set forth and identified at length above, and the products' specific applications to the funeral industry, from marketing information that Defendant, Dodge, released about its products for citizens of New Jersey in the funeral industry to receive.

11.    If, at all relevant times, Plaintiff's employer, a New Jersey citizen, had never received information about the existence of each and every one of the Defendant Dodge's products, set forth and identified at length above, Plaintiff's employer would have never purchased said products, and Plaintiff would have never used said products.

4

12. The International Agency for Research on Cancer (IARC) found formaldehyde to be carcinogenic to humans as early as 2004 with a myriad of other national and international agencies classifying it as potentially carcinogenic, *inter alia.*

13. By way of example, as early as 1993, the U.S. Environmental Protection Agency (EPA) found that: "EPA considers formaldehyde a probable human carcinogen (Group B1)."

14. Moreover, in or around 2009, the National Cancer Institute (NCI) observed an association between an embalmer's exposure to formaldehyde and death from leukemia.

15. Additionally, the Department of Health and Human Services (HHS) classifies formaldehyde as a "known" cancer causing agent whereby establishing there is sufficient evidence demonstrating that individuals with higher levels of exposure to formaldehyde are at increased risks for developing and/or suffering from certain types of rare cancers.

16. In or around June 3, 2011, the HHS's Report on Carcinogens, Twelfth Edition, found "mortuary workers" to be at a high risk of developing leukemia and other cancers.

17. Defendant, Dodge, knew that each and every one of the Defendants Dodge's products, set forth and identified at length above, contained formaldehyde, which has been classified as set forth at length above.

5

18. Defendant, Dodge, while creating, manufacturing, marketing, advertising, distributing, labeling, researching, developing and selling formaldehyde-containing products, for use in the funeral industry, is and has been, at all relevant times, chargeable with knowledge of the dangerous classifications of formaldehyde, which was, upon information and belief, a primary ingredient in each and every one of the Defendants Dodge's products, set forth and identified at length above and/or Defendant, Dodge knew or should have known about said dangerous classifications.

19. Nevertheless, Defendant, Dodge still caused each and every one of the Defendants Dodge's products, set forth and identified at length above, to appear New Jersey for Plaintiff to use without providing adequate warning or instruction as to the appropriate safety measures that Plaintiff should have undertaken when using said products, given the aforementioned classifications.

20. As a result of failure of Defendant Dodge to provide any adequate warning or instructions regarding how to safely use each and every one of the Defendants Dodge's products, set forth and identified at length above, Plaintiff's routine inhalation of fumes from Defendant Dodge's said products, and Plaintiff's routine skin contact with Defendant's said products, while

6

working at the funeral home caused Plaintiff to contract leukemia on or about March 16, 2014.

21. Defendant, Pierce Companies, is a chemical company engaged in the business of creating, manufacturing, marketing, distributing, labeling, researching, developing and selling embalming chemical products and other chemicals and supplies used by morticians and funeral homes, including, but not limited to Powertone (36 Index).

22. From 1996 to the present, Plaintiff worked at Quinn-Hopping Funeral Home located in the State of New Jersey, where her employer, during all relevant times, purchased Defendant Pierce's product, Powertone (36 Index), for Plaintiff's use.

23. At all relevant times, Plaintiff often and routinely used Powertone (36 Index), as the nature of the embalming procedures on deceased bodies called for the use of Powertone (36 Index), while working at her employer's New Jersey funeral home to embalm deceased bodies, by injecting or otherwise inserting Powertone (36 Index) into the deceased bodies.

24. At all relevant times, when Plaintiff was working at the home, she routinely used Powertone (36 Index) that Defendant, Pierce, sent to her New Jersey employer for her use in embalming deceased bodies, and Plaintiff routinely inhaled the fumes from Powertone (36 Index), and Powertone (36 Index) routinely came into contact with Plaintiff's skin.

7

25.   At all relevant times, Plaintiff's employer, a New Jersey citizen, learned about Defendants Pierce's product, Powertone (36 Index), and the products' specific application to the funeral industry, from marketing information that Defendant, Pierce, released about its products for citizens of New Jersey in the funeral industry to receive.

26.   If, at all relevant times, Plaintiff's employer, a New Jersey citizen, had never received information about the existence of Powertone (36 Index), Plaintiff's employer would have never purchased Powertone (36 Index), and Plaintiff would have never used Powertone (36 Index).

27.   At all relevant times, Defendant, Pierce, knew that Powertone (36 Index) contained formaldehyde.

28.   Defendant, Pierce, while creating, manufacturing, marketing, advertising, distributing, labeling, researching, developing and selling formaldehyde-containing Powertone (36 Index) for use in the funeral industry, is and has been, at all relevant times, chargeable with knowledge of the dangerous classifications of formaldehyde, set forth at length above, when formaldehyde was, upon information and belief, a primary ingredient in Powertone (36 Index) and/or Defendant, Pierce, knew or should have known about said dangerous classifications.

29.   Nevertheless, Defendant, Pierce, still caused Powertone (36 Index) to appear in New Jersey for Plaintiff to

use without providing adequate warning or instruction as to the appropriate safety measures that Plaintiff should have undertaken when using said product, given the aforementioned classifications.

30.  As a result of failure of Defendant Pierce to provide any adequate warning or instructions regarding how to safely use Powertone (36 Index), Plaintiff's routine inhalation of fumes from Powertone (36 Index) and Plaintiff's routine skin contact with Powertone (36 Index), while working at the home, caused Plaintiff to contract leukemia on or about March 16, 2014.

31.  Defendant, Hydrol Chemical Company, is a chemical company engaged in the business of creating, manufacturing, marketing, distributing, labeling, researching, developing and selling embalming chemical products and other chemicals and supplies used by morticians and funeral homes, including, but not limited to Saturol.

32.  From 1996 to the present, Plaintiff worked at Quinn-Hopping Funeral Home located in the State of New Jersey, where her employer, during all relevant times, purchased Defendant Hydrol's product, Saturol, for Plaintiff's use.

33.  At all relevant times, Plaintiff often and routinely used Saturol, as the nature of the embalming procedures on deceased bodies called for the use of Saturol, while working at her employer's New Jersey funeral home to embalm deceased

bodies, by injecting or otherwise inserting Saturol into the deceased bodies.

34. At all relevant times, when Plaintiff was working at the home, she routinely used Saturol that Defendant, Hydrol, caused to appear in New Jersey for Plaintiff's use in embalming deceased bodies, and Plaintiff routinely inhaled the fumes from Saturol, and Saturol routinely came into contact with Plaintiff's skin.

35. At all relevant times, Plaintiff's employer, a New Jersey citizen, learned about Defendants Hydrol's product, Saturol, and the products' specific application to the funeral industry, from marketing information that Defendant, Hydrol, released about its products for citizens of New Jersey in the funeral industry to receive.

36. If, at all relevant times, Plaintiff's employer, a New Jersey citizen, had never received information about the existence of Saturol, Plaintiff's employer would never have purchased Saturol, and Plaintiff would have never used Saturol.

37. At all relevant times, Defendant, Hyrdol, knew that Saturol contained formaldehyde.

38. Defendant, Hydrol, while manufacturing and supplying formaldehyde-containing Saturol for use in the funeral industry, is and has been, at all relevant times, chargeable with knowledge of the classifications of formaldehyde, set forth at

10

length above, since formaldehyde was, upon information and belief, a primary ingredient in Saturol and/or Defendant, Hydrol, knew or should have known about said classifications.

39. Nevertheless, Defendant, Hydrol, still caused Saturol to appear in New Jersey for Plaintiff to use without providing adequate warning or instruction as to the appropriate safety measures that Plaintiff should have undertaken when using said products, given the aforementioned dangerous classifications.

40. As a result of failure of Defendant Hydrol to provide any adequate warning or instructions regarding how to safely use Saturol, Plaintiff's routine inhalation of fumes from Saturol and Plaintiff's routine skin contact with Saturol, while working at the home, caused Plaintiff to contract leukemia on or about March 16, 2014.

41. Defendant, XYZ CORP. INC. (1-100), is a chemical company engaged in the business of creating, manufacturing, marketing, distributing, labeling, researching, developing and selling embalming chemical products and other chemicals and supplies used by morticians and funeral homes.

42. From 1996 to the present, Plaintiff worked at Quinn-Hopping Funeral Home located in the State of New Jersey, where her employer, during all relevant times, routinely purchased Defendant XYZ CORP. INC. (1-100)'s products for Plaintiff's use.

11

43. At all relevant times, Plaintiff often and routinely used each and every one of the Defendants XYZ CORP. INC. (1-100)'s products, as the nature of the embalming procedures on deceased bodies called for the use of the specific products, while working at her employer's New Jersey funeral home to embalm deceased bodies, by injecting or otherwise inserting or placing said products into or upon the deceased bodies.

44. At all relevant times, when Plaintiff was working at the home, she routinely used each and every one of the products that XYZ CORP. INC. (1-100), caused to appear in New Jersey for her use in embalming deceased bodies, and Plaintiff routinely inhaled the fumes from XYZ CORP. INC. (1-100)'s products, and Defendant XYZ CORP. INC. (1-100)'s said products routinely came into contact with Plaintiff's skin.

45. At all relevant times, Plaintiff's employer, a New Jersey citizen, learned about Defendants XYZ CORP. INC. (1-100)'s products and the products' specific applications to the funeral industry, from marketing information that Defendant, XYZ CORP. INC. (1-100), released about its products for citizens of New Jersey in the funeral industry to receive.

46. If, at all relevant times, Plaintiff's employer, a New Jersey citizen, had never received information about the existence of each and every one of the Defendant Dodge's products, Plaintiff's employer would have never purchased said

12

products, and Plaintiff would have never used said products. Defendant, Dodge, knew that each and every one of the Defendants XYZ CORP. INC. (1-100)'s products, set forth and identified at length above, contained formaldehyde, which has been classified as set forth at length above.

47. Defendant, XYZ CORP. INC. (1-100), while creating, manufacturing, marketing, advertising, distributing, labeling, researching, developing and selling formaldehyde-containing products, for use in the funeral industry, is and has been, at all relevant times, chargeable with knowledge of the dangerous classifications of formaldehyde, which was, upon information and belief, a primary ingredient in each and every one of the Defendants XYZ CORP. INC. (1-100)'s products, and/or Defendant, Dodge knew or should have known about said dangerous classifications.

48. Nevertheless, Defendant, XYZ CORP. INC. (1-100)'s still caused each and every one of the Defendants XYZ CORP. INC. (1-100)'s products to appear New Jersey for Plaintiff to use without providing adequate warning or instruction as to the appropriate safety measures that Plaintiff should have undertaken when using said products, given the aforementioned classifications.

49. As a result of failure of Defendant XYZ CORP. INC. (1-100) to provide any adequate warning or instructions regarding

how to safely use each and every one of the Defendants XYZ CORP. INC. (1-100)'s products, Plaintiff's routine inhalation of fumes from Defendant XYZ CORP. INC. (1-100)'s said products, and Plaintiff's routine skin contact with Defendant's said products, while working at the home caused Plaintiff to contract leukemia on or about March 16, 2014.

50.   As a direct and proximate result of the above conduct of Defendants, jointly and severally, Plaintiffs have suffered and continue to suffer damages, both special and general; diminishment of career opportunity; loss of self-esteem; disruption of family life; adverse and material changes to her quality of life and may impact her life expectancy; physical manifestations of pain and suffering; emotional distress and trauma; and other irreparable harm.

## FIRST COUNT

### (Strict Product Liability)

51.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 of the Complaint as if set forth at length herein.

52.   The said chemical products, i.e., Permaglo (36 index); Metasyn Normal (28 index); Introfiant (50 index) OTC; Jaundofiant Basic; Jaundofiant Control; Rectofiant; Plasdoplake; Metaflow; Restorative; Edemaco; Perma-Cav 50; Dri-Cav; Syn-Cav;

14

Freedom Cav; Action Powder; Hardening Compound; Q-S Powder; Dryene Penetrating; Dryene Basic; Dry Wash; Syn-Gel HV; Dis-Spray; Perma-Seal Glue; Inr-Seel Paste; Kaloform Cream; Germasidol Soap; Feature Builder Firm; Feature Builder; Feature Builder Solvent; Aron Alpha Glue; Aron Alpha Solvent; Lip Wax and Surface Restorer Wax; Dodge Make-up and Air Brush Make-up; Powertone (36 Index); and Saturol were defective and unreasonably dangerous when Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), placed them into the stream of commerce, in violation of strict products liability common law and *N.J.S.A.* 2A:58C-1 *et seq.*

53. The defects and health hazards of the chemical products i.e. Permaglo (36 index); Metasyn Normal (28 index); Introfiant (50 index) OTC; Jaundofiant Basic; Jaundofiant Control; Rectofiant; Plasdoplake; Metaflow; Restorative; Edemaco; Perma-Cav 50; Dri-Cav; Syn-Cav; Freedom Cav; Action Powder; Hardening Compound; Q-S Powder; Dryene Penetrating; Dryene Basic; Dry Wash; Syn-Gel HV; Dis-Spray; Perma-Seal Glue; Inr-Seel Paste; Kaloform Cream; Germasidol Soap; Feature Builder Firm; Feature Builder; Feature Builder Solvent; Aron Alpha Glue; Aron Alpha Solvent; Lip Wax and Surface Restorer Wax; Dodge Make-up and Air Brush Make-up; Powertone (36 Index); and

Saturol, were a proximate cause of the injuries suffered by Plaintiffs and the damages thereby incurred.

54. By engaging in said conduct, Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100);, have become strictly liable to Plaintiffs.

55. Said conduct of Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), was so willful, wanton, malicious, reckless and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

56. As a direct and proximate result of the wrongful acts and conduct of the Defendants, as described above, Plaintiffs were caused to suffer serious and permanent injuries; were caused to suffer great pain Physical manifestations of pain and suffering and emotional trauma) and will in the future be caused to suffer great pain; were caused to incur medical expenses and will in the future be caused to lose time from employment; suffered adverse and material changes to her quality of life and may impact her life expectancy; and was caused to suffer and will continue to suffer an adverse and material change in her quality of life.

16

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), individually, jointly, and severally as follows:

A.    For money damages for all special and general damages;

B.    For compensatory damages;

C.    For punitive damages;

D.    For emotional distress damages;

E.    For physical manifestations of pain and suffering;

F.    For attorneys' fees and costs of this action;

G.    For interest at the maximum legal rate on all sums awarded;

H.    For Consequential damages; and

I.    For such other and further relief as the Court deems just and proper.

## SECOND COUNT

### (Breach of Warranties)

57.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 51 through 56 of the Complaint as if set forth at length herein.

58.    Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), have breached applicable warranties, express and implied, including safety and are liable to Plaintiffs.

17

59.   As a direct and proximate result of the wrongful acts and conduct of the Defendants, as described above, Plaintiffs were caused to suffer serious and permanent injuries; were caused to suffer great pain Physical manifestations of pain and suffering and emotional trauma) and will in the future be caused to suffer great pain; were caused to incur medical expenses and will in the future be caused to lose time from employment; suffered adverse and material changes to her quality of life and may impact her life expectancy; and was caused to suffer and will continue to suffer an adverse and material change in her quality of life.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), individually, jointly, and severally as follows:

A.   For money damages for all special and general damages;

B.   For compensatory damages;

C.   For punitive damages;

D.   For emotional distress damages;

E.   For physical manifestations of pain and suffering;

F.   For attorneys' fees and costs of this action;

G.   For interest at the maximum legal rate on all sums awarded;

H.   For Consequential damages; and

I. For such other and further relief as the Court deems just and proper.

## THIRD COUNT
### (Negligence)

60. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 57 through 59 of the Complaint as if set forth at length herein.

61. Defendants, the Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), were negligent in creating, manufacturing, marketing, distributing, labeling, researching, developing and selling chemical products i.e., Permaglo (36 index); Metasyn Normal (28 index); Introfiant (50 index) OTC; Jaundofiant Basic; Jaundofiant Control; Rectofiant; Plasdoplake; Metaflow; Restorative; Edemaco; Perma-Cav 50; Dri-Cav; Syn-Cav; Freedom Cav; Action Powder; Hardening Compound; Q-S Powder; Dryene Penetrating; Dryene Basic; Dry Wash; Syn-Gel HV; Dis-Spray; Perma-Seal Glue; Inr-Seel Paste; Kaloform Cream; Germasidol Soap; Feature Builder Firm; Feature Builder; Feature Builder Solvent; Aron Alpha Glue; Aron Alpha Solvent; Lip Wax and Surface Restorer Wax; Dodge Make-up and Air Brush Make-up; Powertone (36 Index); and Saturol.

62. Said conduct of Defendants, the Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC.

(1-100), was so willful, wanton, malicious, reckless and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

63. As a direct and proximate result of the wrongful acts and conduct of the Defendants, as described above, Plaintiffs were caused to suffer serious and permanent injuries; were caused to suffer great pain Physical manifestations of pain and suffering and emotional trauma) and will in the future be caused to suffer great pain; were caused to incur medical expenses and will in the future be caused to lose time from employment; suffered adverse and material changes to her quality of life and may impact her life expectancy; and was caused to suffer and will continue to suffer an adverse and material change in her quality of life.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), individually, jointly, and severally as follows:

A.   For money damages for all special and general damages;

B.   For compensatory damages;

C.   For punitive damages;

D.   For emotional distress damages;

E.   For physical manifestations of pain and suffering;

20

F.   For attorneys' fees and costs of this action;

G.   For interest at the maximum legal rate on all sums awarded;

H.   For Consequential damages; and

I.   For such other and further relief as the Court deems just and proper.

### FOURTH COUNT

### (Fraudulent Misrepresentation)

64.  Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 60 through 63 of the Complaint as if set forth at length herein.

65.  Defendants, the Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), deliberately and carelessly concealed and/or failed to warn product users, including Plaintiff Patricia O'Connor, of the known health risks, including, but not limited to, being a cancer causing agent, associated with the said chemical products i.e., Permaglo (36 index); Metasyn Normal (28 index); Introfiant (50 index) OTC; Jaundofiant Basic; Jaundofiant Control; Rectofiant; Plasdoplake; Metaflow; Restorative; Edemaco; Perma-Cav 50; Dri-Cav; Syn-Cav; Freedom Cav; Action Powder; Hardening Compound; Q-S Powder; Dryene Penetrating; Dryene Basic; Dry Wash; Syn-Gel HV; Dis-Spray; Perma-Seal Glue; Inr-Seel Paste; Kaloform Cream; Germasidol Soap; Feature Builder

21

Firm; Feature Builder; Feature Builder Solvent; Aron Alpha Glue; Aron Alpha Solvent; Lip Wax and Surface Restorer Wax; Dodge Make-up and Air Brush Make-up; Powertone (36 Index);   and Saturol.

66.   Plaintiff Patricia O'Connor relied to her detriment on the concealment of the known health risks associated with the use or continued use of said chemical products i.e.,   Permaglo (36 index); Metasyn Normal (28 index); Introfiant (50 index) OTC;   Jaundofiant   Basic;   Jaundofiant   Control;   Rectofiant; Plasdoplake; Metaflow; Restorative; Edemaco; Perma-Cav 50; Dri-Cav; Syn-Cav; Freedom Cav; Action Powder; Hardening Compound; Q-S Powder; Dryene Penetrating; Dryene Basic; Dry Wash; Syn-Gel HV; Dis-Spray; Perma-Seal Glue; Inr-Seel Paste; Kaloform Cream; Germasidol Soap; Feature Builder Firm; Feature Builder; Feature Builder Solvent; Aron Alpha Glue; Aron Alpha Solvent; Lip Wax and Surface Restorer Wax; Dodge Make-up and Air Brush Make-up; Powertone (36 Index);   and Saturol.

67.   As a direct and proximate result of the wrongful acts and conduct of the Defendants, as described above, Plaintiffs were caused to suffer serious and permanent injuries; were caused to suffer great pain Physical manifestations of pain and suffering and emotional trauma) and will in the future be caused to suffer great pain; were caused to incur medical expenses and will in the future be caused to lose time from employment;

suffered adverse and material changes to her quality of life and may impact her life expectancy; and was caused to suffer and will continue to suffer an adverse and material change in her quality of life.

   **WHEREFORE,** Plaintiffs pray for judgment against Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), individually, jointly, and severally as follows:

A. For money damages for all special and general damages;

B. For compensatory damages;

C. For punitive damages;

D. For emotional distress damages;

E. For physical manifestations of pain and suffering;

F. For attorneys' fees and costs of this action;

G. For interest at the maximum legal rate on all sums awarded;

H. For Consequential damages; and

I. For such other and further relief as the Court deems just and proper.

## FIFTH COUNT

### (Consumer Fraud)

   68. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 64 through 67 of the Complaint as if set forth at length herein.

69. Defendants, the Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), through their creating, manufacturing, marketing, distributing, labeling, researching, developing and selling chemical products i.e., Permaglo (36 index); Metasyn Normal (28 index); Introfiant (50 index) OTC; Jaundofiant Basic; Jaundofiant Control; Rectofiant; Plasdoplake; Metaflow; Restorative; Edemaco; Perma-Cav 50; Dri-Cav; Syn-Cav; Freedom Cav; Action Powder; Hardening Compound; Q-S Powder; Dryene Penetrating; Dryene Basic; Dry Wash; Syn-Gel HV; Dis-Spray; Perma-Seal Glue; Inr-Seel Paste; Kaloform Cream; Germasidol Soap; Feature Builder Firm; Feature Builder; Feature Builder Solvent; Aron Alpha Glue; Aron Alpha Solvent; Lip Wax and Surface Restorer Wax; Dodge Make-up and Air Brush Make-up; Powertone (36 Index); and Saturol, engaged in one or more of the following unlawful practices: unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and/or the knowing concealment, suppression or omission of material facts with intent that Plaintiff herein and other users would rely upon such concealment, suppression, or omission.

70. As a direct and proximate result of the wrongful acts and conduct of the Defendants, as described above, Plaintiffs were caused to suffer serious and permanent injuries; were caused to suffer great pain Physical manifestations of pain and

24

suffering and emotional trauma) and will in the future be caused to suffer great pain; were caused to incur medical expenses and will in the future be caused to lose time from employment; suffered adverse and material changes to her quality of life and may impact her life expectancy; and was caused to suffer and will continue to suffer an adverse and material change in her quality of life.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), individually, jointly, and severally as follows:

A. For money damages for all special and general damages;

B. For compensatory damages;

C. For punitive damages;

D. For emotional distress damages;

E. For physical manifestations of pain and suffering;

F. For attorneys' fees and costs of this action;

G. For interest at the maximum legal rate on all sums awarded;

H. For Consequential damages; and

I. For such other and further relief as the Court deems just and proper.

25

## SIXTH COUNT
### (Loss of Consortium)

71. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 69 through 70 of the Complaint as if set forth at length herein.

72. As a proximate result of the injuries and losses sustained by her wife/spouse, Plaintiff Megan O'Connor has been and will continue to be deprived of her love, companionship, affection, society, consortium, comfort, marital relations, services and support which she previously received.

73. This Plaintiff has rendered and will for the indefinite future be required to render nursing care, medical care, and other services to her wife/spouse in connection with and due to her injuries.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, The Dodge Company, Inc.; Pierce Companies; Hydrol Chemical Company; and XYZ CORP. INC. (1-100), individually, jointly, and severally as follows:

A.   For money damages for all special and general damages;

B.   For compensatory damages;

C.   For punitive damages;

D.   For emotional distress damages;

E.   For physical manifestations of pain and suffering;

F.   For attorneys' fees and costs of this action;

26

G.    For interest at the maximum legal rate on all sums awarded;

H.    For Consequential damages; and

I.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Court Rule 38 of the Federal Rules of Civil Procedure Plaintiffs herein demand a trial by jury on all issues.

Dated:    December 15, 2016          **LAW OFFICE OF ROBERT A. TANDY, LLC**

*s/ Robert A. Tandy*

Robert A. Tandy, Esq. (0387)
Mack-Cali Corporate Center
50 Tice Boulevard, Suite 363
Woodcliff Lake, New Jersey 07677
(201) 474-7103
(201) 474-7101 (facsimile)
rtandy@tandylaw.com
*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiffs, by their attorneys certify that to the best of their knowledge, the matter in controversy is not related to any other action. Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:      December 15, 2016      **LAW OFFICE OF ROBERT A. TANDY, LLC**

**/s/ Robert A. Tandy**

Robert A. Tandy, Esq.(0387)
Mack-Cali Corporate Center
50 Tice Boulevard, Suite 363
Woodcliff Lake, New Jersey 07677
(201) 474-7103
(201) 474-7101 (facsimile)
rtandy@tandylaw.com
*Attorneys for Plaintiff*

28