NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA O'CONNOR, *et al.*, | CIVIL ACTION NO. 16-5177 (JLL) |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| THE DODGE COMPANY, INC., *et al.*, | |
| Defendants. | |

**LINARES**, Chief District Judge

The plaintiffs allege that the plaintiff Patricia O'Connor (hereinafter, "O'Connor") has been employed as a funeral director at the same funeral home company (hereinafter, "the Funeral Company") since 1996, and that she was diagnosed with a form of leukemia known as T-Cell Acute Lymphoblastic Leukemia in 2014. (ECF No. 27.) The plaintiffs further allege that O'Connor developed leukemia because she touched and inhaled the formaldehyde contained in the following embalming and body-preparation products that were sold to the Funeral Company, and that she used during the course of her employment: (1) "Powertone," which was manufactured and sold by the defendant Pierce Companies (hereinafter, "Pierce"); (2) "Saturol," which was manufactured and sold by the defendant Hydrol Chemical Company (hereinafter, "Hydrol"); and (3) more than 30 different products manufactured and sold by the defendant The Dodge Company, Inc. (hereinafter, "Dodge").

(*Id.*) The amended complaint asserts seven causes of action: (1) strict products liability; (2) negligence; (3) breach of express warranty; (4) breach of implied warranty; (5) fraudulent misrepresentation; (6) consumer fraud; and (7) loss of consortium. (*Id.*)[1]

There are now three motions pending before the Court in this action:

(1) Pierce's motion to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim (*see* ECF Nos. 50 through 50-11, 51, and 56 through 56-3), which the plaintiffs oppose (*see* ECF Nos. 55 and 55-1);

(2) Hydrol's motion to dismiss the claims asserted against it pursuant to Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim (*see* ECF Nos. 57 through 57-43, 58, 59, 69 through 69-7, and 70), which the plaintiffs oppose (*see* ECF Nos. 66 through 66-5); and

(3) Hydrol's separate motion for summary judgment in its favor pursuant to Rule 56 (*see* ECF Nos. 64 through 64-33, 65 through 65-2, 68 through 68-5, and 70), which the plaintiffs oppose (*see* ECF Nos. 67 through 67-2).[2]

---

[1] The cause of action for breach of express warranties and the cause of action for breach of implied warranties are set forth under the same count in the amended complaint. (ECF No. 27 at 17–19.)

[2] Dodge has no motions pending in this action at this time.

The Court will resolve the three motions upon a review of the papers and without oral argument. *See* L. Civ. R. 78.1(b). For the following reasons, (1) the motions to dismiss are granted insofar as they concern the causes of action for breach of express warranty, fraudulent misrepresentation, and consumer fraud, but are otherwise denied, and (2) Hydrol's motion for summary judgment is denied without prejudice.

## BACKGROUND

The Court has previously set forth the factual and procedural background of this action at length, as well as the standards for resolving motions that are made pursuant to Rule 12(b)(2) and Rule 12(b)(6), in one Opinion and two Orders. (*See* ECF No. 24 at 1–16, and No. 25 at 1–3 (an Opinion and an Order, entered on November 17, 2016, addressing motions to dismiss); ECF No. 36 at 1–10 (an Order, entered on February 27, 2017, addressing motions for leave to file an interlocutory appeal and motions to dismiss).) Accordingly, the Court need not restate, and hereby incorporates, the same herein.

## PERSONAL JURISDICTION

Pierce and Hydrol argue that the Court lacks specific personal jurisdiction over them, because: (1) the plaintiffs have adduced no proof that Pierce sent Powertone, or that Hydrol sent Saturol, to the Funeral Company; (2) even if those products made their way to the Funeral Company, the plaintiffs have not alleged that Pierce made any shipments there after 2002, or that Hydrol made any shipments there after 1998; and (3) of the more than 30 products that allegedly caused O'Connor to develop leukemia, Pierce and Hydrol are only

connected to one product each. (ECF No. 50-10 (Pierce's brief); ECF No. 57-41 (Hydrol's brief).)

Those arguments are without merit, and the Court concludes that there is specific jurisdiction over Pierce and Hydrol in this action. First, the amended complaint specifically alleges that Pierce shipped Powertone to the Funeral Company, that Hydrol shipped Saturol to the Funeral Company, that O'Connor used those products during the years that the shipments were being made and for several years thereafter from the Funeral Company's stock, and that her repeated exposure to those products, in conjunction with her use of Dodge's products, caused her to eventually develop leukemia in 2014 because those products contained formaldehyde. (ECF No. 27.) Second, contrary to Pierce's and Hydrol's arguments, the plaintiffs have produced evidence that support those allegations through O'Connor's deposition testimony and the affidavits from the defendants themselves. (ECF No. 50-2 at 7–10 (O'Connor testifying that "Powertone was a primary embalming arterial fluid"; that she used Pierce products for every embalming up to 2002 until the Funeral Company switched over to using only Dodge products; and that she still used Powertone on occasion after 2002 until the Funeral Company's stock was depleted); *id.* at 21–22 (O'Connor testifying that she used Saturol "for difficult cases"); ECF No. 57-7 at 3, 6 (Hydrol's president asserting that it sold embalming products to the Funeral Company up to 1998).)

As a result, the plaintiffs have properly alleged and demonstrated that their claims unquestionably relate to specific contacts by Pierce and Hydrol with O'Connor and the

Funeral Company in New Jersey. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754–55 (2014); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Therefore, Pierce and Hydrol could reasonably expect to be sued in New Jersey if someone suffered an injury as a result of using their products in New Jersey. Furthermore, the maintenance of claims in a New Jersey federal court concerning alleged injuries suffered by a New Jersey citizen, who was employed in New Jersey by an employer that ordered products from Pierce and Hydrol for her use in New Jersey, does not offend traditional notions of fair play and substantial justice. *See Daimler AG*, 134 S. Ct. at 754–55; *Marten*, 499 F.3d at 296. That the plaintiffs' jurisdictional allegations may be "imperfect" in the view of Pierce and Hydrol certainly "do[es] not countenance dismissal" of the plaintiffs' claims. *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (holding the same concerning the rules of federal pleading).

Pierce and Hydrol also argue that the connection between O'Connor's use of their products and her leukemia diagnosis is too attenuated, because too much time has elapsed since those defendants last shipped their products to the Funeral Company, and that O'Connor alleges that they each produced only one offending product among the many products listed in the amended complaint. However, those arguments go to "the underlying merits of [the plaintiffs'] substantive claims," and "[a]t this juncture, the Court's inquiry is focused solely on whether, taking [the plaintiffs'] allegations as true it would be appropriate to exercise personal jurisdiction." *Maximum Quality Foods, Inc. v. DiMaria*, No. 14-6546, 2015 WL 1865754, at *5 n.5 (D.N.J. Apr. 20, 2015). The fact that the Court has specific personal jurisdiction over Pierce and Hydrol is a separate issue from their liability for their

alleged conduct concerning their products, which would be more appropriately determined on the merits at a later stage of this litigation. *See Trois v. Apple Tree Auction Ctr., Inc.*, No. 16-51414, 2018 WL 706517, at *5 n.9 (5th Cir. Feb. 5, 2018) (holding the same in addressing the issue of personal jurisdiction); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510–11 (2006) (emphasizing the distinction between jurisdictional and merits-based inquiries).

Thus, there is specific jurisdiction over Pierce and Hydrol here. In view of this determination, the Court will not address whether there is general jurisdiction over those defendants here. *See Chadwick v. St. James Smokehouse, Inc.*, No. 14-2708, 2015 WL 1399121, at *4 (D.N.J. Mar. 26, 2015) (holding that upon finding that specific jurisdiction exists over a defendant, a court need not rule on the merits of general jurisdiction).

## FAILURE TO STATE A CLAIM

I. **Strict products liability and negligence**

   A. **New Jersey Products Liability Act does not subsume the common law claims**

Pierce alone argues that the New Jersey Products Liability Act, N.J.S.A. § 2A:58C-1, *et seq.* (hereinafter, "the NJPLA"), subsumes all of the plaintiffs' causes of action other than the cause of action for breach of express warranty. (ECF No. 50-10 at 18–19.) That argument is without merit. The NJPLA itself provides that it "shall not apply to any environmental tort action," N.J.S.A. § 2A:58C-6, which is defined as "a civil action seeking damages for harm where the cause of the harm is exposure to toxic chemicals or

6

substances." N.J.S.A. § 2A:58C-1(b)(4). The plaintiffs' causes of action indeed concern O'Connor's alleged exposure to toxic chemicals or substances in the workplace, and as a result the NJPLA does not apply here. *See Magistrini v. One Hour Martinizing Dry Cleaning*, 109 F. Supp. 2d 306, 310–11 (D.N.J. 2000) (holding that a plaintiff's claims that she developed leukemia due to her exposure to a chemical dry-cleaning solvent in the workplace was an environmental tort action, and that the claims would be permitted to proceed under the common law). Thus, the plaintiffs' causes of action may proceed under common law here.

**B.     Strict products liability and negligence under common law**

The plaintiffs have asserted claims for strict products liability and for negligence. Contrary to Pierce's and Hydrol's arguments, the plaintiffs have specifically alleged that Pierce manufactured and sold a product known as Powertone, and that Hydrol manufactured and sold a product known as Saturol. The plaintiffs further allege that the proximate cause of O'Connor's injury, *i.e.*, leukemia, was based upon the same defect that existed when the products left the control of those defendants, *i.e.*, the products contained formaldehyde. Nothing more is required at this stage in the litigation. *See Magistrini*, 109 F. Supp. 2d at 311 (holding the same where a plaintiff alleged that her leukemia was linked to her exposure in her workplace to the products of multiple manufacturers). O'Connor indeed identified those products as sources of her injuries, as discussed above in the section concerning personal jurisdiction.

Furthermore, the plaintiffs have adequately pleaded that Pierce and Hydrol had a duty to warn those involved in the funeral industry of the risks connected to repeated exposure to formaldehyde. The plaintiffs point to reports that were released by federal agencies that found that mortuary workers were at high risk of developing cancer, including leukemia, due to formaldehyde exposure. (*See* ECF No. 27 at 5; ECF No. 55 at 27; ECF No. 66 at 39.) Whether Pierce and Hydrol were in fact aware of the aforementioned alleged risks when their products were distributed must await a determination by a trier of fact.

The Court notes in conclusion that a products liability action may contain causes of action for both strict liability and negligence. *See Magistrini*, 109 F. Supp. 2d at 311 (holding the same, and citing *James v. Bessemer Processing Co., Inc.*, 155 N.J. 279, 296 (1998)). Therefore, the part of the motions that seek dismissal of the strict products liability and negligence causes of action are denied.

## II. Breach of express warranty

Pierce and Hydrol argue that the plaintiffs have failed to allege that the packaging or literature for Powertone and Saturol made any express warranties as to their safety, and that the plaintiffs have not submitted any examples of such express warranties. The plaintiffs do not respond to these arguments. (*See generally* ECF No. 55 at 29 (the plaintiffs arguing that a warranty may be found on a label or a logo, but not providing any specific examples as to Powertone); ECF No. 66 at 21 (the plaintiffs admitting that Saturol did not have any express warranty on its packaging).)

It is well settled that a cause of action for breach of express warranty must allege, among other things, that a defendant expressly made an affirmation, promise, or description about the product. *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 324 (D.N.J. 2014) (stating the same). The plaintiffs have not submitted for the Court's review any such express warranty that was issued by either Pierce or Hydrol, in the form of a label, brochure, or otherwise, that concerned the safety of their products. *See Walters v. Carson*, No. 11-6545, 2012 WL 6595732, at *3 (D.N.J. Dec. 17, 2012) (dismissing a breach of express warranty claim for the plaintiff's failure to provide an example of an express warranty that was put out by the defendant). Thus, this cause of action fails on its face, and the motions to dismiss insofar as they concern the breach-of-express-warranty claims asserted against Pierce and Hydrol are granted. *See Sich v. Pfizer Pharm.*, No. 17-2828, 2017 WL 4407930, at *3 (D.N.J. Oct. 4, 2017) (dismissing a breach-of-express-warranty claim, because the plaintiffs "failed to present an affirmation, promise, or description about the product made by defendant").[3]

## III. Breach of implied warranty

The concept of implied warranty includes the warranty of merchantability and the warranty of fitness for a particular purpose. *See Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 419 (D.N.J. 2016) (holding that "there is not a great distinction between the warranty

---

[3] As previously noted, Dodge has not joined in the current motions to dismiss. Thus, the express warranty claim insofar as it is asserted against Dodge remains viable.

of merchantability and of fitness for a particular purpose"); *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 370 (N.J. 1960) (holding that "the distinction between a warranty of fitness for a particular purpose and of merchantability in many instances is practically meaningless"). The Court finds that the plaintiffs have properly pleaded causes of action for breach of implied warranty against Pierce and Hydrol by alleging that their products were unfit for use in the workplace of a funeral home without proper protection due to the fact that they contained formaldehyde, and that Pierce and Hydrol failed to provide adequate safety instructions for the use of their products. *See id.* at 420 (holding that a product may be unfit for its ordinary purpose where there are manufacturing defects, design defects, or inadequate instructions for use). Therefore, the motions to dismiss insofar as they seek dismissal of the cause of action for breach of implied warranty are denied.

### IV. Fraudulent misrepresentation and consumer fraud

In order for a claim of fraudulent misrepresentation to survive a motion to dismiss, a plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). In other words, such a claim must include "the 'who, what, when, where and how' elements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1422. As part of that pleading, a plaintiff must point to a specific material misrepresentation of fact that was made by the defendant. *See Frederico*, 507 F.3d at 200.

The Court finds that the plaintiffs have failed to properly plead a cause of action for fraudulent misrepresentation, as they have failed to even allege a *specific* material misrepresentation that was made by either Pierce or Hydrol concerning the safe use of their products. In fact, in response to Pierce's and Hydrol's arguments on this issue, the plaintiffs concede that they have not alleged fraud with any specificity, and they merely argue that whether these defendants "knew or did not know that [they were] selling . . . dangerous product[s] without proper warning or operating instructions is presently knowable only to Pierce [and Hydrol], and such a fact can only be learned through discovery!" (ECF No. 55 at 32 (punctuation in original).) However, the lack of discovery should not have prevented the plaintiffs from at least being able to make a specific allegation in good faith of a misrepresentation made by Pierce and Hydrol at this juncture. *See Schiano v. MBNA*, No. 05-1771, 2016 WL 4009821, at *4 n.3 (D.N.J. July 25, 2016) (dismissing a fraudulent misrepresentation claim because the plaintiff failed to merely allege a specific misrepresentation by the defendant); *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 316 n.8 (D.N.J. 2013) (doing the same, and rejecting the plaintiff's argument that "the underlying facts are within the Defendants' control and he has not had a chance to take discovery"). Thus, the Court grants the motions to dismiss insofar as they address the cause of action for fraudulent misrepresentation.

The Court is compelled to come to the same conclusion concerning the plaintiffs' cause of action for consumer fraud. The Court previously held that embalming products could be covered by the New Jersey Consumer Fraud Act (hereinafter, "the NJCFA"). (*See*

ECF No. 24 at 12–15.) However, the Court also previously held that a cause of action for consumer fraud must set forth an affirmative misrepresentation that was made by the defendants, *i.e.*, Pierce and Hydrol, with specificity. (*Id.* at 11–12.) As noted herein, the plaintiffs have failed to meet this standard by failing to allege that those defendants made any affirmative misrepresentations concerning their products. *See JWQ Cabinetry Inc. v. Granada Wood & Cabinets Inc.*, No. 13-4110, 2015 WL 1189577, at *6–8 (D.N.J. Mar. 16, 2015) (stating the same in dismissing NJCFA and common law fraud claims); *Dean v. New England Mut. Life Ins. Co.*, No. 14-2211, 2015 WL 404743, at *8–9 (D.N.J. Jan. 29, 2015) (same). Thus, the Court also grants the motions to dismiss insofar as they address the cause of action for consumer fraud.[4]

## V. Loss of consortium

The Court has dismissed the causes of action for breach of express warranty, fraudulent misrepresentation, and consumer fraud insofar as they have been asserted against Pierce and Hydrol. As a result, the cause of action for loss of consortium is dismissed to the extent that it is dependent upon those claims. The Court notes that the loss of consortium cause of action insofar as it concerns the other causes of action that are asserted against Pierce and Hydrol remains viable, and that the cause of action remains completely viable against Dodge.

---

[4] As previously noted, Dodge has not joined in the current motions to dismiss. Thus, the fraudulent misrepresentation and consumer fraud claims insofar as they are asserted against Dodge remain viable.

# SUMMARY JUDGMENT

## I. Legal standard

It is not necessary for the Court to restate the standard for resolving a motion for summary judgment that is made pursuant to Rule 56, because that standard has been already enunciated. *See* Fed. R. Civ. P. 56(a) (providing for an award of summary judgment if there is no genuine dispute of material fact and the movant is entitled to judgment as matter of law); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (setting forth the summary judgment standard); *United States ex rel. Kosenke v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the summary judgment standard).

## II. Argument

Hydrol has made a sweeping motion for summary judgment in its favor. Hydrol argues that there is no scientific merit to the plaintiffs' assertion that O'Connor's repeated exposure to formaldehyde could cause her to develop leukemia, and goes so far as to refer to the plaintiffs' allegations as being premised upon "fiction." (ECF No. 64-31 at 6.) In support, Hydrol provides an affidavit from Howard Sandler, M.D., who is identified as "a licensed physician specializing in occupational and environmental medicine," and further identified as a "consulting occupational physician," who has "designed, developed, and managed occupation health programs for formaldehyde workplace exposed populations, [and has] performed assessments of formaldehyde exposed workers with malignancies." (ECF No. 64-31 at 15–16, 24.) In that affidavit, Sandler asserts that all current studies show

that there are no statistically significant results for a causal association between formaldehyde exposure and cancer in general, and O'Connor's form of leukemia in particular. (*See* ECF No. 64-15.)

The Court finds that genuine issues of material fact remain here. The plaintiffs refer to several studies and reports in their amended complaint and in their other papers, such as reports from the United States Environmental Protection Agency, the United States Department of Health and Human Services, and the National Cancer Institute, that suggest a link between exposure to formaldehyde and leukemia, particularly for those who are embalmers. (*See* ECF No. 27 at 5; ECF No. 55 at 27; ECF No. 66 at 39; ECF No. 67 at 2.) Of those reports, the following examples have been provided for the Court's review:

> (1) a comprehensive report from the National Center for Biotechnology Information, which is part of the National Institutes of Health (hereinafter, "NIH"), that "show[s] a strong association between formaldehyde and leukemia," and that specifically refers to those employed "in the funeral industry" as being at risk (ECF No. 67-2 at 6–7; *see generally id.* at 4–17); and

> (2) a 2009 article reporting that the International Agency for Research on Cancer has found a link between formaldehyde exposure and leukemia (ECF No. 67-2 at 19–23).

There is no doubt that the Sandler affidavit that was submitted by Hydrol in support of summary judgment is comprehensive. In addition, it is unfortunate that the plaintiffs did not provide copies of all of the reports and studies of which they are aware that allegedly

link formaldehyde exposure to leukemia for the Court's review. Nonetheless, in viewing the evidence in the light most favorable to the plaintiffs at this preliminary juncture, the Court finds the motion for summary judgment to be premature, as the report from the NIH is sufficient to raise a genuine issue of fact in response to the expert opinion provided by Sanders.

Therefore, Hydrol's motion for summary judgment is denied. However, the Court denies that motion without prejudice to Hydrol to move again for summary judgment when appropriate, *i.e.*, at the conclusion of discovery in this action.[5]

## CONCLUSION

The parts of the motions to dismiss concerning the dismissal of the causes of action that are asserted against Pierce and Hydrol for breach of express warranty, fraudulent misrepresentation, and consumer fraud, as well as the portions of the cause of action for loss of consortium that are dependent upon those causes of action, are granted. However, the parts of the motions to dismiss concerning the dismissal of the causes of action that are asserted against Pierce and Hydrol for strict products liability, negligence, and breach of implied warranty, as well as the portions of the cause of action for loss of consortium that are dependent upon those causes of action, are denied. Furthermore, Hydrol's motion for summary judgment is denied without prejudice. For good cause appearing:

---

[5] Hydrol also suggested that the Court should impose an expedited discovery schedule concerning the science behind the plaintiffs' claims if the Court were to deny its motion for summary judgement. (*See* ECF No. 64-31 at 20–21, 36–40.) That request should be made to the Magistrate Judge separately.

15

**IT IS THEREFORE** on this \_\_\_14th\_\_\_day of February, 2018, **ORDERED** that the separate motions filed by the defendants Pierce Companies and Hydrol Chemical Company to dismiss the causes of action that are asserted against them **(ECF No. 50 and ECF No. 57)** are granted to the extent that the motions seek the dismissal of the causes of action that are asserted against them for breach of express warranty, fraudulent misrepresentation, and consumer fraud, as well as the portions of the cause of action for loss of consortium that are dependent upon those causes of action, and are otherwise denied; and it is further

**ORDERED** that the motion by the defendant Hydrol Chemical Company for summary judgment **(ECF No. 64)** is denied without prejudice; and it is further

**ORDERED** that the causes of action for breach of express warranty, fraudulent misrepresentation, and consumer fraud, as well as the portions of the cause of action for loss of consortium that are dependent upon those causes of action, that are asserted against the defendants Pierce Companies and Hydrol Chemical Company are dismissed; and it is further

**ORDERED** that the causes of action for strict products liability, negligence, and breach of implied warranty, as well as the portions of the cause of action for loss of consortium that are dependent upon those causes of action, that are asserted against the defendants Pierce Companies and Hydrol Chemical Company remain viable.[6]

_____
JOSE L. LINARES
Chief Judge, United States District Court

---

[6] The Court notes once again, for the purposes of clarity, that this Opinion and Order does not address any of the claims that have been asserted against the defendant The Dodge Company, Inc.

16